BRANDENBERRY PARK EAST APARTMENTS *et al.*, Plaintiffs-Appellants and Counterdefendants-Appellees, *v.* EDWARD ZALE *et al.*, Defendants-Appellees and Counterplaintiffs-Appellants.

First District (3rd Division)   Nos. 77-164, 77-500 cons.

Opinion filed July 26, 1978.

Harold E. Collins & Associates, of Chicago, for appellants.

Jack J. Herman, of Chicago (Herman, Glazer, Waters & Kessler, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

Fifteen buildings in Arlington Heights containing 92 apartments, known as Brandenberry Park East Apartments, were sold by the defendants, Edward and Albert Zale (hereinafter jointly referred to as "the Zales"), under articles of agreement for warranty deed. The purchaser was the predecessor of the plaintiff. This dispute arose as a result of the sale and subsequent dealings which culminated in a settlement agreement between plaintiffs, an Illinois limited partnership, and defendants.

Shortly after the sale, the plaintiffs were unable to meet the second payment due the Zales under the purchase agreement. The Zales suggested to the investors that the Zales assume management of the property instead of repossessing the property and forfeiting the investors' interests. The limited partnership accepted this suggestion and agreed to pay all on-site expenses and to pay the Zales a management fee of 3½% of the gross rental revenue. The Zales assumed management in the early part of December 1973.

At about the same time, Joseph Iacovo and his wife Maxine became the general partners. On January 12, 1974, the limited partnership, acting through the Iacovos, and the Zales entered into another agreement. This agreement provided for payment by the limited partnership of a portion of the arrearage on the purchase price, deferment of the balance of the installment then in default, and the Zales' continued management of the buildings.

In the months following this agreement, a series of disagreements developed. These disputes concerned whether the Zales had authority to give rent concessions in leasing vacant apartments, or authority to pay delinquent bills incurred by the partnership prior to the Iacovos' association with the limited partnership.

After extensive discussions between the Zales and the Iacovos, defendants were offered a two-page agreement dated July 15, 1974. The document, prepared by plaintiffs' attorney, recited that it was "a Settlement Agreement taking precedence over all other and prior agreements." The settlement provided that the limited partnership was to immediately pay the Zales a sum which included the principal and half the interest owing in satisfaction of the purchasers' obligation under the purchase agreement; the Zales were to assign title to the apartment buildings to the partnership; the partnership was to pay the Zales their unpaid management fees; the Zales were to relinquish management in an orderly fashion; the limited partnership was to assume all debts incurred during the period of the Zales' management with the right to review and approve or disapprove all bills; and the limited partnership and the Zales then were to agree within 30 days on a plan for payment of priority creditors in the settlement.

Although the Zales accepted the settlement, it was only partially performed. Plaintiffs paid the amount covering the principal on the purchase price and half the accrued interest, and management was turned over to plaintiffs. However, plaintiffs refused to approve the Zales' accounting, pay management fees to the Zales, or pay certain bills the Zales incurred as managers. The Zales, in turn, refused to pay real estate taxes of $26,672 for the year 1969, or to release their interest in the real estate.

Plaintiffs sued for specific performance of the articles of agreement for sale of the real estate, claiming that they were entitled to have legal title to the real estate transferred to them free and clear of 1969 real estate taxes. Plaintiffs sought damages, claiming the Zales usurped management and were guilty of fraud, conspiracy, theft, negligence and other misconduct during the management period. Plaintiffs claimed that the Zales were liable for defects in the buildings they sold which violated municipal ordinances, requiring expenditures by plaintiffs to bring the buildings in compliance with the ordinances. Plaintiffs also sought to recover the management fees they had paid the Zales, alleging that the Zales were not entitled to such payments because they had no real estate broker's license. The Zales counterclaimed to require plaintiffs to pay unpaid management fees which the Zales contended they had earned, and to require plaintiffs to assume and prepare a plan to pay bills of 49 third-party creditors to whom plaintiffs had become indebted. Zale Construction Co., a corporation owned by the Zales, and two other contractors filed petitions to foreclose liens.

After a nonjury trial, the circuit court held that defendants were indebted to plaintiffs for the 1969 real estate taxes, that plaintiffs were indebted to the Zales for management fees because plaintiffs' claim based

on mismanagement and misconduct was without substance, and that plaintiffs, rather than the Zales, were liable for any valid and outstanding third-party bills. In addition, plaintiffs were required to indemnify the Zales against those bills. The decree also ordered the Zales to release all interest in the real estate, and the trial judge transferred the petitions to foreclose mechanics liens to the Land Title Section of the circuit court. The circuit court awarded the Zales $2,438 in damages under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41) after finding that some of plaintiffs' allegations were untrue and made in bad faith without reasonable cause. Plaintiffs appealed and the Zales cross-appealed from the respective provisions of the circuit court decree unfavorable to them.

■■■ *Management Fees*: Although plaintiffs agreed by the settlement to pay the Zales management fees, they now claim the Zales cannot enforce this agreement because they did not have a real estate broker's license. We disagree. A property manager who shows apartments for lease in the property he is managing is not required to have a real estate broker's license. The Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1973, ch. 114½, par. 101 *et seq.*) does not refer to property management, and the parties have cited no decisions which require a person who engages in property management to have a broker's license. Although plaintiffs contended that the Zales were being compensated for renting apartments, rather than for managing the complex, no evidence supports that conclusion. The trial court found that plaintiffs hired Zale as a manager, and this finding is not against the manifest weight of the evidence.

■■ Moreover, section 6 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1973, ch. 114½, par. 106) specifically provides that the act is inapplicable to any person who as owner or lessor does anything incident to the management of property. As contract sellers under the articles of agreement, the Zales were the owners of an interest in the real estate and therefore exempted by the act from any requirement of a license. Thus, we affirm the trial court's finding that plaintiffs are liable to pay management fees as agreed upon in the settlement.

■■ *Plaintiffs' contention that defendants forced plaintiffs to turn management over to them*: This contention is not supported by the evidence, which established that late in 1973 the Zales were in a position to take the property back because of the purchasers' default. The evidence showed that Edward Zale told the purchasers that he preferred to help them restore the property so they could meet their payments and still retain the property, and that he was willing to assume the management of the property in an effort to "turn the property around." The trial judge found that the plaintiffs hired the Zales as the manager and

that the Zales did a competent job of managing the real estate; this finding is not against the manifest weight of the evidence.

■■ *Plaintiffs' contention that defendants mismanaged the property, were guilty of fraudulent conduct in managing the property, and as agent breached a fiduciary duty to the plaintiffs in connection with the property*: This claim is not supported by the evidence. The trial judge repeatedly put the plaintiffs on notice that they had failed to introduce evidence to support these allegations. Notwithstanding these admonitions, the plaintiffs were unable to introduce satisfactory evidence on these issues. It would unnecessarily increase this opinion's length to discuss the instances of mismanagement which the plaintiffs claimed but did not prove. However, the court's findings that the Zales competently managed the real estate and that they did not put their interests above those of the plaintiffs are not against the manifest weight of the evidence.

■■ Plaintiffs attempt to apply the rule that when an agent occupies a fiduciary position and profits thereby, a presumption of fraud arises, which the agent has the burden of rebutting by clear and convincing proof that he has not betrayed the confidence reposed in him. (*Doner v. Phoenix Land Bank* (1942), 381 Ill. 106, 114, 45 N.E.2d 20.) However, this general rule, while valid, does not assist plaintiffs here because of the trial court's findings that the Zales did not improperly profit from managing the apartment complex and that they did not deal independently of plaintiffs' interests to further their own personal gain. (See *Blanchard v. Lewis* (1953), 414 Ill. 515, 524, 112 N.E.2d 167.) In any event, the instances of mismanagement, fraud and misconduct to which the plaintiffs referred in the trial court and in their briefs in this court all occurred prior to July 15, 1974, the date of the settlement; therefore, all such claims were necessarily incorporated in and disposed of by the settlement.

■■ *Free rent concessions*: Plaintiffs complain that during the period of the Zales' management the Zales granted free rent concessions to new tenants, contradicting plaintiffs' verbal and written instructions to the Zales that no free rent concessions were to be given. Although defendants did disobey these instructions, no proof was offered to establish the amount of damage which plaintiffs sustained from the rent concessions. Plaintiffs contend that the amount of the free rent was at least $3,450 and that they should be entitled to a judgment for that amount. However, a question exists as to whether plaintiffs received some advantage from the rent concessions because, as the Zales point out, these concessions resulted in the rental of apartments which otherwise would have remained vacant. Thus, no basis is offered by either party for determining how much damage, if any, plaintiffs suffered from the rent concessions. And it is not necessary for this court to resolve the issue of whether the

plaintiffs suffered by reason of the rent concessions and, if so, how much. The parties were fully aware of the disagreement over the rent concessions at the time the settlement was reached in July 1974. Because the item of rent concessions was not mentioned in the settlement as a credit against management fees payable to the Zales, it is obvious that the intention of the parties was, as the trial court found, to dispose of this claim without credit to plaintiffs for any rent-free concessions.

*Amounts owing to third parties*: The trial court concluded that all of the bills of third-party creditors covered by the settlement, which included those bills listed in the settlement and other bills for debts incurred in the ordinary course of business during the period of the Zales' management, were the responsibility and liability of plaintiffs and not of the Zales. However, the decree entered by the trial court directed that these claims were the responsibility and liability of plaintiffs only to the extent that they were valid; the court retained jurisdiction for the purpose of adjudging the rights of the parties as claims of third-party creditors were disposed.

■■ Plaintiffs' fears that the Zales will confess liability on invalid claims are unfounded. Clearly, the procedure established by the decree is broad enough to permit notification by plaintiffs to the Zales of which claims plaintiffs desire to contest, and also to require the Zales to permit plaintiffs to defend those claims. In oral argument, counsel for plaintiffs conceded that plaintiffs could defend against the claims in question, but his concern was that after the decree requiring plaintiffs to indemnify the Zales on these claims, the Zales no longer would have any interest in cooperating in defense of the claims. It was proper for the trial court to state this conclusion because the settlement provided that plaintiffs were to assume these debts. The only way the trial court could have disposed of this issue properly was by concluding that the claims were the responsibility of plaintiffs, rather than of the Zales.

*Count III of Second Amendment to Complaint*: By this count, which was stricken on motion of the Zales, plaintiffs alleged that when sold by the Zales the apartment buildings had roofs and balconies not constructed or maintained in compliance with the building ordinances of Arlington Heights. The complaint further alleged that the condition of the roofs and balconies violated a provision of the articles of agreement containing a representation by the Zales that the buildings conformed to applicable building ordinances. The complaint also charged that, while managing the complex, the Zales undertook a program of repairs of the balconies and roof, and then charged the cost of those repairs to the plaintiffs. Other matters alleged in count III of the second amended complaint were abandoned by plaintiffs at trial; consequently, plaintiffs have no basis for complaining in this appeal that count III was stricken with respect to

those matters. However, plaintiffs should have been permitted at trial to offer evidence to support their allegations regarding the balconies and the roof, as well as to prove whether the condition complained of existed at the time the buildings were sold, or whether, as the Zales contend, the problem arose more than a year later. Defendants argue that despite the order striking count III, plaintiffs were not prevented from attempting to offer proof regarding repairs to the balconies. Although the record contains some testimony regarding the balconies, it is impossible to determine whether plaintiffs' proof was as complete as it might have been had count III not been stricken.

■■ The Zales also contend that any complaint plaintiffs may have had regarding the physical condition of the buildings at the time of their sale could not be reopened because it was disposed of by the settlement. We find nothing in the settlement, however, intended to permit the Zales to correct physical defects in the properties for which they were liable under the articles of agreement, and then to charge the cost of repairs or remodeling to plaintiffs. In fact, the settlement required the Zales to assign title to the apartment complex to plaintiffs in accordance with the articles of agreement, in which the Zales represented that the improvements conformed to applicable building ordinances and regulations. Therefore, that portion of the circuit court's order entered on March 24, 1976, striking count III of the second amended complaint, must be reversed and this case remanded for an evidentiary hearing limited to the allegations of that count relating to the condition of the balconies and roof at the time the articles of agreement were executed.

Before considering the sanctions imposed on the plaintiffs under section 41 of the Civil Practice Act, we will review two issues raised by the Zales' cross-appeal.

■■ *Responsibility for payment of 1969 real estate taxes*: The trial judge found that in reaching the settlement, the parties did not give any consideration to the 1969 real estate taxes, which, according to prior agreements, were a liability of the Zales. The trial judge ruled that the settlement did not affect that liability, and we agree. As pointed out in the preceding section of this opinion, the settlement provided that the Zales would deed title in accordance with the articles of agreement. That document, in turn, required the Zales to pay the 1969 real estate taxes prior to delivering title. Thus, the settlement left the Zales responsible for this tax obligation.

In addition, the position which the Zales take in this appeal is contradicted by Edward Zale's trial testimony that the settlement was initiated by his proposal that if plaintiffs would pay the principal indebtedness, the Zales would waive half the accrued interest, or approximately $28,000. Simple logic demonstrates that plaintiffs would

gain no real advantage from paying the principal indebtedness to save $28,000 in interest, if at the same time plaintiffs were required to pay $26,672 in real estate taxes which otherwise would be the Zales' obligation. It was the clear intention of the parties that the Zales remain liable for the 1969 real estate taxes.

*Directing transfer of the real estate*: The trial judge ordered the Zales to release the real estate to plaintiffs. The Zales refused, seeking to retain title to the real estate until plaintiffs performed the settlement agreement. The Zales argue here that the circuit court should have conditioned the release of the property on performance by plaintiffs of the settlement provisions.

The answer to the Zales' contention is that the various items of dispute between the parties should be ended by this decision, except for plaintiffs' claim as to the balconies and payment of third-party claims by plaintiffs. The former should not hold up the release of the Zales' interest because it will not involve any payment to the Zales or on their behalf. The circuit court has reserved jurisdiction to administer the disposition of third-party claims, and this should provide the Zales with adequate protection. All that remains, except for resolution of the sanctions imposed against plaintiffs, is for plaintiffs to pay the Zales their management fees, and for the Zales to reimburse plaintiffs for the 1969 real estate taxes and release any interest they may have in the real estate. We assume that all of these matters can and will be accomplished virtually simultaneously, and that the parties will perform the respective obligations this decision imposes on them without further resort to the courts. If either party should continue to be recalcitrant about fully performing the provisions of the settlement after its construction by the circuit court and this court in lengthy proceedings, the other party may apply for further directions to the circuit court, which has retained jurisdiction. We therefore approve the portion of the decree which will result in plaintiffs obtaining title free of the Zales' interests.

■■■■ *Section 41 sanctions*: Sanctions of $1,313 were imposed on plaintiffs because of untruthful allegations made in bad faith. (Ill. Rev. Stat. 1973, ch. 110, par. 41.) The imposition was based on the allegations referred to above regarding the Zales' noncompliance with building ordinances at the time of the sale, a conspiracy promoted by the Zales to bankrupt plaintiffs so that the Zales could retain the properties they had sold, and allegations that the Zales converted to their own use supplies and equipment purchased by plaintiffs. The trial judge found that plaintiffs' pleadings regarding the claim of conspiracy and conversion of plaintiffs' supplies and equipment were untrue and made in bad faith, and that no evidence was introduced in support thereof. We believe that this finding, reached after eight witnesses testified and many documents were introduced, was supported by the manifest weight of the evidence. The

award of sanctions under section 41 is a matter for the trial judge's discretion. (*Village of Evergreen Park v. Spangler* (1976), 40 Ill. App. 3d 947, 949, 353 N.E.2d 257.) On the record before us, we cannot hold that the imposition of sanctions with respect to these pleadings was an abuse of discretion.

Plaintiffs point to a number of isolated and unrelated events and claim they constitute enough proof of conspiracy to demonstrate that plaintiffs' allegations were not in bad faith, but were at worst a pleading excess. However, the events on which plaintiffs rely, whether viewed individually or collectively, do not support plaintiffs' charges that the Zales conspired to bankrupt plaintiffs and foreclose on the property; the infirmities in the evidence reflect more than a mere failure by plaintiffs to meet their burden of proof.

Plaintiffs also claim they did not accuse the Zales of theft of their property, but that a careful reading of the allegations show that the Zales were charged only with allowing theft to occur; plaintiffs state that their pleadings allege not "theft," but "negligent management." The allegations in question, though, accuse the Zales of knowingly allowing plaintiffs' supplies and equipment to be diverted for the Zales' own personal use. This is the equivalent of charging criminal participation in theft, and the record contains no proof that the Zales stole any of plaintiffs' property.

■■ Because this action is being remanded for further proceedings with respect to the allegations of building code violations, the sanctions relating to plaintiffs' failure to support these allegations were premature. Accordingly, because we have approved the sanctions with respect to two of the three allegations on which the award was based, we reduce the amount awarded by one-third, from $1,313 to $876.

The trial judge further awarded section 41 damages of $1,125 as attorneys' fees for prosecuting the section 41 petition. That section subjects the offending pleader "to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with reasonable attorney's fee * * *." This language encompasses all resulting expenses, including the expense of section 41 proceedings themselves. The additional award of $1,125 as attorneys' fees is therefore affirmed.

■■ The Zales urge that additional section 41 sanctions should be imposed because of what they characterize as misrepresentations and distortions in plaintiffs' brief in this court. We disagree. The defendants seek sanctions based on plaintiffs' lack of success in this appeal on specific issues. Section 41 of the Civil Practice Act authorizes the trial court to impose sanctions. It does not authorize a reviewing court to impose sanctions based on matters set forth in briefs on appeal.

■■ *Defendants' claim that trial judge should have awarded additional*

*section 41 sanctions*: Plaintiffs' complaint requested relief with regard to certain property in which they never had an interest; however, this property was eliminated from this cause of action by an agreed order entered prior to trial. Certain trustees' fees arose from transactions relating to this property, and plaintiffs delayed the elimination of this property from their action until the Zales agreed to reimburse plaintiffs for these charges. It appears that had the Zales agreed to pay these charges earlier, this property would have been released from this lawsuit earlier. Under these circumstances, it was not an abuse of discretion for the trial court to refuse to grant section 41 sanctions on this ground.

Although the trial court decided the issue of whether the Zales forced and coerced their acceptance as managers upon plaintiffs in favor of the Zales, this does not mean that the plantiffs' allegations regarding forcing management upon them were made in such bad faith that the trial court erred in denying section 41 relief on this claim. The issue raised by plaintiffs' complaint was whether the Zales' economic position was so strong it persuaded plaintiffs to accept the Zales as manager without further threats or demands. That the trial court found plaintiffs voluntarily hired the Zales as manager does not require that sanctions be awarded; the trial judge did not abuse his discretion by refusing sanctions on this account.

The decree of the circuit court is affirmed in part, reversed in part, modified in part, and remanded for further proceedings consistent with this opinion.

McNAMARA and McGILLICUDDY, JJ., concur.