*In re* ESTATE OF EMIL J. KNUTSON.—(EMIL J. KNUTSON, Petitioner-Appellee, *v.* JOHN BETTS, Respondent-Appellant.)

Third District   No. 79-333

Opinion filed May 5, 1980.

John A. Betts, of Ottawa, for appellant, *pro se.*

Melvin Hoffman and George Mueller, both of Hoffman & Mueller, and Stephen J. West, of Langer & West, all of Ottawa, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Pursuant to petition of Emil Knutson for the assessment of attorney's fees and costs against the respondent John Betts, the circuit court of La Salle County entered judgment in favor of the petitioner and against the respondent for $2,058.75 for attorney's fees and $421.55 for costs for a total of $2,580.30. The respondent, John Betts, has appealed.

On October 6, 1978, Attorney John Betts filed a verified petition for conservatorship pursuant to the Probate Act, alleging that Emil Knutson was incompetent. Additionally the petition recited:

"2. That to the best of the Petitioner's knowledge there are no living relatives of the alleged incompetent in the State of Illinois.

4. * * * to the best of the Petitioner's knowledge, the incompetent owns no real estate in LaSalle County or Illinois."

Betts was represented by John Hardin III. In addition to the petition a physician's affidavit was filed by Betts that the alleged incompetent Knutson had been examined on October 2, 1978, by Terrance W. Love, an osteopathic physician. The affidavit was prepared by attorney Betts and notarized by his secretary. An immediate hearing was requested and the court ordered (*ex parte*) that the hearing be held on October 11, 1978, and also ordered notice thereof to the alleged incompetent.

On October 11, 1978, a hearing was held in the circuit court of La Salle County, at which time Betts, Hardin and Knutson were present.

Stephen West was appointed guardian *ad litem* on the morning of October 11, but he stood mute during the proceeding. No witnesses were sworn, but Betts and Hardin made statements to the court and Knutson responded to questions by the court and by Betts and Hardin inquiring into his affairs. Knutson was 79 years of age and lived in a trailer on premises which he had homesteaded. During the course of the questioning Knutson indicated that he was able to take care of himself and that the lawyers were trying to take the property away from him and squander his money. Knutson also denied being examined by Dr. Love or any other doctor, but Betts explained this to the trial court saying that he, Betts, had taken the doctor to Knutson's premises but had not told Knutson that the person with him was a doctor.

On October 11, 1978, Betts filed and brought to the attention of the court a report of the Health Board of Manilus Township which recited that on October 6, 1978, at 10 p.m. a hearing was held on the complaint of John Betts representing the First National Bank of Ottawa against Emil Knutson. On this appeal respondent Betts has filed an affidavit, the purport of which is to claim that the report is in error in reciting that the hearing was held at 10 p.m. on October 6 and that, on the contrary, the hearing was held on the morning of October 6. Although we deem it inappropriate to contradict the record by an affidavit filed at this late date, the report primarily deals with the condition of the premises. It also indicates that even in advance of the hearing Betts intended to commence conservatorship proceedings, and the report concludes with the observation that Knutson could use some supervision.

The court granted the prayer of the petition, declaring Knutson to be incompetent and appointed James Hardin as conservator at the request of Betts. On the same day Hardin filed his oath and a petition for writ of assistance directing the removal of Knutson from his trailer to a sheltered care home in Streator, Illinois. The writ was granted the same day, and Knutson was forcibly removed to the sheltered care home in Streator. Less than 24 hours after Knutson had been declared incompetent and removed from his home, his residence burned to the ground. The cause of the fire was unknown.

On October 16, 1978, a petition to remove conservator was filed on behalf of Emil Knutson by his guardian *ad litem* and attorney alleging that the proceeding was fraudulent and the result of questionable conduct. The judge who had made the determination on October 11 recused himself and, after a change of venue applied for and granted on October 19, hearing on this petition was ultimately held on December 1. On October 19 Hardin requested leave to resign as conservator. This request was granted and the public conservator of La Salle County was substituted in his stead.

On December 1, a hearing was held on an amended petition to vacate the adjudication of incompetency filed by the attorney for Knutson. Dr. Terrance Love was called to testify regarding his original physician's affidavit. He testified that he observed Knutson but did not testify about conducting any medical examination. Dr. Love testified that he had first seen the affidavit when it was presented to him by attorney Betts one or two days after he had observed Knutson. Love's testimony at the hearing was contrary to the statements made in the affidavit.

At the time of the second hearing, Knutson was 80 years of age. He recalled that attorney Betts and Dr. Love had in fact visited his residence, but that neither of them had left the automobile in which they arrived. He also testified that he had a niece in Chicago and two nieces and nephews in California, and that he had informed the respondent Betts of this fact in March or April 1978, long prior to the filing of the petition for conservatorship. He also recalled attorney Betts being involved in the purchase of his real estate, and that he had been assured by Betts that he would have the right to stay there as long as he lived.

After the hearing on October 11 the guardian *ad litem* learned that on March 29, 1978, the respondent, John Betts, purchased from Emil Knutson a 20-acre parcel of real estate located in rural La Salle County, Illinois, for his client, Lyle Weber. Attorney Betts prepared the quitclaim deed and notarized the signature of Knutson, and the property was subsequently deeded into a trust at the First National Bank of Ottawa, Illinois. The purchase price was $500 an acre, and the quitclaim deed prepared by Betts contained the following reservation:

"Right of the Grantor (Knutson) to retain use of the East one hundred fifty feet of the real estate listed above for his lifetime, or until his abandonment of the premises, whichever comes first."

The facts of this transaction were brought to the attention of the court during the second hearing.

After the hearing the trial court vacated the order of incompetency and in its order found that the allegations and conclusions of the complaint were misleading and "not substantiated" by fact.

Within 30 days of the entry of the order vacating the adjudication of Knutson finding him incompetent to manage his own estate and person, the petitioner Knutson filed a petition for expenses and attorney's fees pursuant to section 41 of the Civil Practice Act. That petition alleged, in part, that the allegations of attorney Betts in the original petition for conservatorship were untrue and made without reasonable cause, and requested that attorney's fees and costs be assessed against the respondent Betts in addition to all costs and expenditures made on behalf of the petitioner Knutson by reason of the false pleading. Ultimately a hearing was held on this petition on April 6, 1979.

Testimony was presented by a licensed attorney practicing in La Salle County, Illinois, relative to the fees billed to Knutson, and an exhibit was offered and admitted specifying the hours billed. The respondent Betts neither cross-examined the witness nor presented any testimony in his own behalf. Unlike *Adams v. Silfen* (1951), 342 Ill. App. 415, 96 N.E.2d 628, relied on by respondent, the trial judge in the instant case who awarded the attorney's fees was the judge who had earlier made the determination that the pleadings allegations were untrue and made without reasonable cause. After the hearing the court made findings of fact and awarded the petitioner the total sum of $2,058.75 and costs.

Respondent first argues he was denied due process of law and equal protection of the law because the trial court refused to grant his motion for a continuance on April 6, 1979.

The petition for assessment of attorney's fees and costs was filed on December 29, 1978. Hearing was set on this petition for March 21, 1979, at which time respondent requested a continuance in order to permit his representation by his attorney of record, Melvin Lewis. The petitioner was ready to proceed on March 21, but the cause was continued until April 6 for the purpose requested by the respondent. On April 6 Betts appeared in court with Jay Frank, who indicated he was Betts' attorney and that he had been employed as of 4 p.m. on the previous day and needed time to confer with his client. He requested a continuance, which was denied by the court, and as a consequence Frank withdrew as Betts' counsel and Betts proceeded to represent himself.

■■ According to Betts, the continuance was denied because he was an attorney able to represent himself so far as the court was concerned. However, the record fails to support the assertion that this was the cause for denial of the continuance. It is true the court was aware that Betts was an attorney and that it took this fact into consideration in determining whether Betts had exercised due diligence in securing representation. The petition had been pending for over three months, yet the record fails to disclose why the respondent did not retain counsel earlier nor why his earlier counsel was unable to represent him. Neither does the record show any reason why Frank was not engaged earlier than 4 p.m. of the previous day. In fact, the inferences which may be drawn from these uncontradicted circumstances demonstrate he was employing dilatory tactics rather than due diligence. Consequently, the denial of the motion of continuance did not constitute an abuse of discretion. See *People v. Friedman* (1980), 79 Ill. 2d 341.

■ Next respondent argues the trial court erred in granting petitioner's motion for attorney's fees and costs.

The petition was filed under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) which provides:

"§41. Untrue Statements. Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

Prior to 1976 this statutory provision also required the moving party to prove the allegations were not made in good faith. (See *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 347 N.E.2d 736; *Dudanas v. Plate* (1976), 44 Ill. App. 3d 901, 358 N.E.2d 1171; *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621.) The elimination of the requirement of proof of bad faith as an independent element to be proved does not, of course, completely eliminate this factor. The facts and circumstances disclosed, motive, intent or purpose may still be material in determining whether allegations are made upon reasonable cause.

As its basis for entering judgment on April 9, 1979, for attorney's fees and costs, the trial court found in part:

"2. That the allegations in the Petition for Conservatorship relating to the Petitioner's knowledge of living relatives, the alleged incompetent's interest in real estate, and the general incompetency of the alleged incompetent were untrue and were made without reasonable cause."

In arguing the trial court erred in granting the motion, the respondent insists these findings of the trial court are not supported by the evidence.

The major thrust of the trial court's order is its conclusion the allegations regarding incompetency were not true and were not based on reasonable cause. The additional findings regarding the allegations about the absence of any interest in real estate and lack of knowledge of any relatives are subsidiary issues and, in our opinion, if these allegations alone were the basis of the court's judgment we would be inclined to agree with the respondent they are not such allegations which would support the imposition of reasonable attorney's fees contemplated by section 41.

In his effort to argue the trial court's order was not supported by the evidence, respondent suggests first that a mere reversal of the judgment of incompetency does not show the allegations were not made without reasonable cause and were untrue. Second, the respondent insists he can not be accountable for the perjury of the doctor upon which the allegation in the complaint was based.

The record does demonstrate the doctor's affidavit was false because he had not in fact examined Knutson. Since the respondent was with the

doctor and since he prepared the affidavit there is ample evidence in the record that the respondent knew the affidavit was false. Therefore, we believe his efforts to disclaim any responsibility for or knowledge of the doctor's false affidavit are unavailing.

The allegations of the complaint regarding relatives and property which the court found were also untrue and made without reasonable cause are consistent with and supportive of the major allegation regarding competency. The factual untruth of these allegations tended to support the main allegation. If Knutson's relatives had been notified and had been present, the falsity of the general allegations might have been disclosed at a much earlier date. Likewise, by alleging in the complaint that Knutson had no interest in real estate, an allegation which was not required by statute, disclosure of any interest of the respondent adverse to that of Knutson was avoided. To suggest, as does the respondent, that the guardian *ad litem* for the trial court could and should have discovered his interest does not contradict the fact that the allegation is untrue and that its untruthfulness tends to support the trial court's determination that the principal allegation is made without reasonable cause.

■ In view of all the evidence we do not believe it can be said the only support for the court's order is the fact that the initial determination of incompetency was later reversed. While such a reversal may be considered a necessary element in determining that the general allegation of incompetency was untrue, there is ample other evidence from which the court might infer the respondent knew the allegation of incompetency was untrue and it was made without reasonable cause. *Grandys v. Spring Soft Water Conditioning Co.* (1968), 101 Ill. App. 2d 225, 242 N.E.2d 454; *Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253, 379 N.E.2d 674.

■ Finally, the respondent argues that if attorney's fees were properly awarded at all they should apply only to the period prior to October 19, 1978. As a reason for this contention the respondent argues that the court was ready to hear the matter on October 19 but the petitioner was not. According to Betts, the only purpose for continuing the hearing until December 1, 1978, was to increase the attorney's fees. We find no merit to this contention since there is no evidence opposing the view that the attorney's time for which fees were awarded was reasonably necessary in resolving the controversy.

For the foregoing reasons the judgment of the circuit court of La Salle County is affirmed.

Judgment affirmed.

STENGEL and BARRY, JJ., concur.