Ruth Cook Norris, Plaintiff, Cross-Appellant, v. Drake Associates, Inc., f/k/a Drake Personnel, Inc., Defendant, Cross-Appellee.

Drake Associates, Inc., f/k/a Drake Personnel, Inc., Counterplaintiff, Cross-Appellee, v. Ruth Cook Norris, Cook Associates, Inc., and Marvin S. Fenchel, Counterdefendants, Cross-Appellants.

Gen. Nos. 52,500, 52,526. (Consolidated.)

First District, Second Division.

April 22, 1969.

Berger, Newmark & Fenchel, of Chicago (Harry D. Lavery, of counsel), for appellants.

James B. Martin and John D. Vosnos, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

Ruth Cook Norris filed an action for an accounting and the recovery of commissions which Drake Associates, Inc., an employment agency, allegedly owed to her for placements she made while in Drake's employ as an employment placement counselor. Drake counterclaimed, requesting an injunction and damages against Norris, Cook Associates and Marvin Fenchel on the ground of an alleged combination to steal Drake's business records, clients and employees. Norris, Cook Associates and Fen-

chel thereafter filed claims under section 41 of the Civil Practice Act for recovery of their reasonable expenses and attorneys' fees incurred by reason of Drake's alleged untrue pleadings, made without reasonable cause and not in good faith.

The matter was referred to a master in chancery who heard extensive evidence and received numerous exhibits. The master's report recommended a money judgment for Norris on her complaint, a judgment against Drake on its counterclaims, and a judgment taxing Drake with the master's fees. The master also found that Drake's pleadings were untrue and made without reasonable cause and not in good faith, concluded that Norris, Cook Associates and Fenchel were entitled to recover their reasonable expenses and attorneys' fees, and recommended that proofs thereof be taken by the chancellor.

Judgment was entered by the chancellor in favor of Norris on her complaint and against Drake on its counterclaims. Drake appealed that judgment to this Court. (General Number 52,500.) A subsequent judgment was entered by the chancellor taxing the master's fees against Drake and denying the section 41 relief requested by Norris, Cook Associates and Fenchel. Drake appealed from that part of the second judgment taxing the master's fees, and Norris, Cook Associates and Fenchel cross-appealed from the denial of the section 41 relief. (General Number 52,526.) Both appeals, General Numbers 52,500 and 52,526, were consolidated for consideration in this Court. This Court on June 12, 1968, dismissed both appeals taken by Drake and ordered the parties to proceed upon the cross-appeal in General Number 52,526 alone.

The sole issue raised here is the propriety of the chancellor's determination that Norris, Cook Associates and Fenchel (plaintiff and counterdefendants) were not entitled to relief under section 41 of the Civil Practice Act. Section 41 gives a party the right to recover reasonable

expenses and attorneys' fees from an offending party incurred by reason of the untrue pleadings, made without reasonable cause and not in good faith, filed by the offending party.

The original complaint, filed in September 1964, alleged that on and prior to July 26, 1962, Norris was employed by Drake as an employment counselor pursuant to an oral contract. It was alleged she was to receive as compensation an amount equal to 35% of all commissions received by Drake on placements made through her efforts and 5% of all commissions received by Drake on placements made by the other Drake employment counselors. The complaint alleged that Drake was indebted to Norris for unpaid compensation in an amount which could be determined only by an examination of Drake's books and records, and that Drake refused Norris access to the books and records.

Drake's answer, verified by Drake Vice-President John F. Schmidt, admitted that plaintiff was in Drake's employ on and prior to July 26, 1962, and denied the balance of the allegations contained in the complaint.

Together with its verified answer, Drake filed a counterclaim against Norris. The counterclaim alleged that Norris had been employed by Drake, that it was agreed between the parties that Norris was to receive 35% of all commissions received by Drake on placements made by Norris, and that on July 28, 1962, Drake and Norris stated an account as to the amount due Norris, which Drake in fact paid to her. It was further alleged that Norris, when she terminated her employment with Drake, took with her certain records belonging to Drake, that she organized her own employment agency and that she had solicited Drake's employees and clients to deal with her agency. The counterclaim was also verified by Schmidt.

On September 21, 1964, notice was served upon Drake that a deposition was to be taken of its President, Lon

Barton; the notice further directed that Drake produce all placement invoices for the period of January 1962, through September 1962. At his November 2, 1964, deposition, Barton testified that Drake had copies of the previously requested invoices, but he refused to produce them on advice of counsel. A notice of deposition to be taken of Vice-President Schmidt and Era Moore, Drake's controller, which was dated November 16, 1964, further directed that the said invoices be produced. A court order of December 1, 1964, also directed the production of these documents. At his later deposition on January 5, 1965, Barton testified that he did not have the said invoices and that "we do not keep those." Moore testified at his deposition on January 12, 1965, that the said invoices had been destroyed on his order in late December 1964 or early January 1965. On February 15, 1965 the cause was referred by the chancellor to the master in chancery who began taking proofs.

Ruth Cook Norris testified that she had experience in employment placement and counseling prior to 1951 and that from 1951 to 1953 she held a position in an employment agency owned by Drake's President, Barton. Between 1953 and July 26, 1962, she was employed by Drake, first as a placement counselor, then as a supervisor, and finally as manager of Drake's operations. She testified that, as manager, she received as compensation 35% of all commissions received by Drake on placements made by her and 5% of the commissions received on placements made by the rest of the Drake employment counselors. She further testified that after a client was placed in a position, a fee invoice was sent to the employer; the time when payment of the commission was made by the employer varied with each account.

Norris testified that at the time she left Drake she had no agreement with Drake to forego any commissions to which she was then entitled for placements which had been made, nor did she enter an account stated with Drake

27

in this regard. On July 28, 1962, two days after she terminated her association with Drake, Norris furnished Drake with a statement of all pending accounts, and denied that she ever furnished Drake with an account of the monies due her.

Norris testified that she opened an employment counseling agency, Cook Associates, Inc., (counterdefendant) sometime after Labor Day in 1962 with the aid of an attorney, counterdefendant Marvin Fenchel. Several persons previously connected with Drake later joined Cook Associates, and to the best of Norris' knowledge none of them brought with them any documents pertaining to Drake's operations. Norris further testified that she did not take any matters belonging to Drake with her when she left Drake, and that she at no time saw any matters belonging to Drake in Cook Associates' offices.

Richard Morgan testified for Drake and stated that he had been in the employ of Cook Associates between October 1964 and May 1965. Prior to his employment at Cook, he had been employed as a counselor by Drake. He testified that he saw Drake Exhibits 1–4 in the Cook offices in late April or early May 1965. The exhibits consisted of two Drake placement resumé cards for Clifford Thompson and for H. B. Ely, and two Cook invoice notices for their respective placements. He testified that in mid-April 1965 he observed a subpoena duces tecum tacked to the bulletin board at Cook Associates, and that Norris told him that if he had anything on his desk which did not belong to Cook he should dispose of it. He testified that this occurred about a week before he received Exhibits 1–4 from Norris when she threw them on his desk. He stated that he did not know why Norris gave the cards to him and that she did not instruct him what to do with them.

In early May 1965, Morgan contacted Barton and was promised $3,000 and certain legal services in return for Exhibits 1–4. A few days later Morgan and Barton met

again, with Barton's attorney, and the exhibits were turned over to Barton. Morgan was asked by Barton whether he knew of any other materials at Cook Associates which belonged to Drake and Morgan replied in the negative. Prior to leaving Cook Associates, Morgan had received $1,100 from Barton and expected that he would receive the balance of the $3,000 at the conclusion of this litigation. Morgan testified that Exhibits 1–4 were the only documents belonging to Drake in his possession and that he brought everything he had pursuant to a subpoena duces tecum.

On August 23, 1965, Drake filed a second amended answer denying that Norris was an employee of Drake between January 1, 1959, and the date this action was instituted and denying any obligation or agreement on Drake's part to pay her commissions. An account stated was again affirmatively pleaded as well as an oral agreement between Norris and Drake that the latter's obligations to her ceased whenever she terminated her employment with Drake.

Drake also filed a supplemental counterclaim, verified by Moore, naming Cook Associates and Marvin Fenchel as additional counterdefendants. The supplemental counterclaim alleged that Norris and Fenchel confederated to organize Cook Associates and to solicit Drake's associates and business; that Norris dealt with Drake after January 1, 1959, as an independent contractor; that Norris and the persons from Drake who were induced to leave Drake to go with Cook Associates took with them numerous papers, files, etc., belonging to Drake; that, upon advice of counsel, Norris ordered the destruction of all records and matters belonging to Drake which were in the possession of Cook Associates; and that all said matters were destroyed with the exception of 280 exhibits which Drake would produce at trial. Norris, Cook Associates and Fenchel's verified replies to the amended counterclaim controverted the affirmative allegations

29

contained therein, and further requested relief under section 41 of the Civil Practice Act.

Drake resumed its proofs on November 1, 1965, and Schmidt testified that Norris submitted to him, on July 28, 1962, a statement of all her pending placements. He further testified that she received as compensation 35% of the commissions received by Drake on all placements made by her, and 5% on the "Drake people she supervised."

Norman Mayell testified that he had worked as a placement counselor for Cook Associates in 1962 and 1963, and that he made the placements connected with Exhibits 1–4. He stated that he made the Ely placement about November 26, 1962, and the Thompson placement sometime thereafter. He testified that he had previously worked for Drake and that when he left Drake in August 1962 he took with him some placement cards, which had been available in quantity to all Drake counselors, and which he used while at Drake and after he left Drake. Mayell testified that he received part of the Ely information while at Drake and that he took the blank Ely card with him when he left because he considered it his personal record of Ely. The Ely card was then in blank form and Mayell later completed the card through his own efforts. The Thompson card was also blank when Mayell came to Cook Associates. Mayell testified that he never showed the cards to Norris nor to anyone else connected with Cook Associates. Placement cards bearing the name of Drake, marked as Drake Exhibits 5–280, were also shown to Mayell who testified that while he may have had occasion to use some of the cards while he was at Drake, he did not take any of them when he left.

Richard Morgan again testified and stated that while he was with Cook Associates he had possession of Exhibits 5–280. He took them with him when he left Cook in April 1965 and gave them to Barton's attorney in August

1965. He testified that the conversations which Norris had with the Cook counselors concerning the discarding of matters in their possession which did not belong to Cook was a reaffirmation of Cook general policy in that regard. He also testified that when he told Barton and Barton's attorney that he did not have any Drake documents in his possession while at Cook Associates other than Exhibits 1–4, he was being untruthful with them.

John Schmidt again testified and stated that he observed at least 70% of Exhibits 5–280 in a drawer in Mayell's desk the day before Mayell left Drake, and that although they were missing after Mayell had left, he had no actual knowledge of where they were after Mayell's departure. He testified that he could associate some of the cards with the cards he observed in Mayell's desk because he could remember some of the names on the cards; however, the witness was unable to recall any of those names "without seeing the card and getting the overall impression."

Clifford Thompson testified that his wife prepared the Thompson card about July 31, 1962, and mailed it to Mayell at Drake. The first time Thompson met Mayell was at Cook Associates. He accepted the position secured through Mayell's efforts about the middle of October 1962.

Lon Barton testified that Norris' commission on placements was 35% on the placements made by her and an "override" of 5% on the placements made by other counselors brought in by her. In an earlier disposition, however, he testified that Norris received 5% on "whatever the counselors brought in, individually, themselves." He was unable to recall any counselor at Drake for whose work Norris did not receive the 5% override. He further testified that Norris was never a manager at Drake, but in his earlier deposition he testified that she had been the manager of Drake's operations.

Norris testified under section 60 and stated that six Drake counselors eventually joined Cook Associates. She testified that she did not see either the Ely card or the Thompson card until the instant trial. Norris also testified that she secured clients through various personnel directories and advertised the opening of Cook Associates in various newspapers.

Era Moore, Drake's controller, testified that Exhibits 5–280 were given to Barton by Morgan in October 1965.

Barton was called in rebuttal under section 60 and testified that he did not know of any account stated between Drake and Norris. He further testified that there was a sizable turnover of counselors at Drake, they "were coming and going."

Mayell testified in rebuttal that he did not take Exhibits 5–280 with him when he left Drake, and that at no time did Norris solicit him to leave Drake. Norris again testified and denied that she gave Morgan Exhibits 1–4 and stated that she left all Drake material at Drake when she resigned her position there.

The master's report was filed June 29, 1966, and found, inter alia, that in late 1959 or early 1960 Norris became manager of Drake, thereafter receiving compensation at a rate of 35% on all commissions received by Drake from placements made by her and a 5% override on all commissions from placements made by all other Drake counselors. When she resigned from Drake, Norris submitted a letter to Drake detailing all placements pending at the time; she also requested payment of the commissions due her as of that time. When she left Drake, Norris took no names, addresses, documents, or the like, belonging to Drake. When Mayell came to Cook Associates from Drake, he brought with him the Ely and Thompson cards, but that this was unknown to Norris and Cook Associates.

The report further found that the business of Cook Associates commenced through newspaper advertising and word-of-mouth contact, and clients were secured through various personnel directories. Norris did not solicit any of the Drake counselors who subsequently came to Cook Associates.

The master found that Morgan, Drake's witness, was totally unreliable, that he admitted perjury and also admitted lying to Barton and others. Since Morgan was the source of Drake's Exhibits 1–280, the master gave no credence to that testimony.

The master concluded that Norris was entitled to recover a money judgment against Drake as prayed in her complaint. It was further concluded that there was no evidence to support Drake's counterclaims, with the single exception of Mayell's use of the Thompson placement card while at Cook Associates. The master made special findings that the overwhelming majority of Drake's pleadings, both its answers and counterclaims, were not substantiated by the proofs and concluded that Norris, Cook Associates and Fenchel should be allowed the relief requested under section 41. The report recommended that the chancellor take proofs pursuant to section 41 for the purpose of determining the expenses and attorneys' fees incurred by Norris, Cook Associates and Fenchel because of those untrue pleadings, made without reasonable cause and not in good faith.

Drake filed a motion to suppress the report which was denied on July 28, 1966. Drake then filed objections to the report, specifically objecting to the finding that Norris, Cook Associates and Fenchel were entitled to relief under section 41 on the grounds that the master gave an "opinion" in this regard and also that the master's actions were not within the scope of the general reference from the chancellor. Alternatively, if the master's action was within the scope of the reference order, it was argued

that the findings were made without a trial as required by section 41 and that such trial could only be conducted by the chancellor and not delegated to the master. Also objected to was the recommendation that the chancellor hear proofs as to expenses and attorneys' fees. The objections were overruled and were allowed to stand as exceptions to the report.

The matter with respect to the section 41 relief was re-referred to the master who was ordered to file a supplemental report detailing which of the allegations and/or denials in the Drake pleadings were found to be untrue and made without reasonable cause and not in good faith. The master thereafter filed a supplemental report specifically enumerating those portions of the Drake pleadings which were untrue and made without reasonable cause and not in good faith. A motion to suppress the supplemental report, filed by Drake, was denied by the chancellor and an order was entered disapproving portions of the original report dealing with the section 41 relief and also disapproving the supplemental report.

The chancellor entered his second judgment which taxed the master's fees against Drake and Drake appealed. The judgment also provided that no section 41 relief be allowed Norris, Cook Associates and Fenchel, from which they filed this cross-appeal.

The foregoing summary of the pleadings and evidence clearly supports the master's findings that many of the Drake allegations and denials were untrue and made without reasonable cause and not in good faith. Under the circumstances the master was correct in concluding that Norris, Cook Associates and Fenchel (plaintiff and counterdefendants) were entitled to recover reasonable expenses and attorneys' fees and in recommending that the chancellor hold a hearing thereon. Ready v. Ready, 33 Ill App2d 145, 157-62, 178 NE2d 650; Ill Rev Stats 1967, c 110, par 41.

Drake's contention that Norris, Cook Associates and Fenchel failed to show that Drake's pleadings were not made in good faith is unavailing. A serious doubt is cast upon the good faith of Drake by its allegations that Norris dealt with Drake as an independent contractor, whereas Drake's president first testified that she was Drake's manager but later testified that she was not the manager, merely an employment counselor; denials that Norris was entitled to the 35% and 5% commissions, whereas Drake's president and others connected with Drake testified that she was compensated on that basis for her services; Barton's promise to pay Morgan $3,000 and to supply him with legal services in another matter, in return for Morgan's testimony and the exhibits; the destruction of the placement invoices by Drake after the demand and order that they be produced at the several depositions, and the like.

■■ Drake further contends that the master, under the general order of reference from the chancellor, had no power to make findings, conclusions and recommendations as to section 41 relief. Although section 41 provides that expenses and attorneys' fees are "to be summarily taxed by the court at trial," that section does not preclude a master from taking proofs and making findings with respect to the relief requested. Whether a party is entitled to section 41 relief should be determined by the same judicial officer who hears the evidence on the issues in the action. (Boss v. Coe Inv. Co., 45 Ill App2d 417, 424, 195 NE2d 735.) The general order of reference required the master to hear all issues raised by the pleadings, including the subsequently filed amended counterclaim as well as the subsequently filed claim for section 41 relief. It should also be noted that the chancellor, after the master had submitted his first report, re-referred the matter to the master for a supplemental report specifically finding which of Drake's allegations

and/or denials were found to be untrue and made without reasonable cause and not in good faith.

For these reasons the judgment as it applies to the requested section 41 relief is reversed and the cause is remanded with directions to hold a hearing on the reasonable expenses and attorneys' fees incurred by plaintiff and counterdefendants pursuant to Section 41 of the Civil Practice Act, and to enter judgment thereon.

Judgment reversed and cause remanded with directions.

LYONS, P. J. and McCORMICK, J., concur.