RAYMOND DAYAN, Plaintiff-Appellee, *v.* McDONALD'S CORPORATION *et al.,* Defendants-Appellants.

First District (1st Division)   No. 78-1125

Opinion filed September 18, 1978.

Thomas A. Foran, of Foran, Wiss & Schultz, of Chicago, for appellants.

Saul A. Epton and Gerald B. Mullin, both of Epton & Druth, Ltd., of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff Raymond Dayan entered into an agreement with defendant McDonald's Corporation for the acquisition and operation of McDonald's restaurants in Paris, France. As part of the agreement, the parties agreed that both Illinois and France had jurisdiction to resolve disputes that should arise thereunder. Subsequently, McDonald's filed a suit in France

alleging that Dayan had breached certain conditions of the agreement and sought to terminate his operating licenses. McDonald's also filed a second suit for trademark infringement. Both suits are still pending. Thereafter, Dayan filed a suit in the circuit court of Cook County seeking an injunction enjoining McDonald's from terminating the operating licenses of the French restaurants and ordering the issuance of an operating license for the restaurant involved in the trademark infringement suit. After hearing arguments, the trial court granted Dayan's motion for a preliminary injunction, pending further hearings. McDonald's appealed.

On appeal, McDonald's argues that (1) the trial court improperly granted the preliminary injunction because the matter was pending in France; (2) Dayan failed to allege grounds sufficient for the issuance of a preliminary injunction; and (3) the trial court improperly ordered a preliminary injunction by failing to first hold a hearing.

We affirm.

Plaintiff Raymond Dayan entered into a master license agreement with defendant McDonald's Corporation permitting him to acquire and operate McDonald's restaurants in Paris, France. Dayan was to follow a schedule of openings over a 30-year period at which time a minimum of 166 would be in operation. Under the agreement, operating licenses for each restaurant were to be issued as long as Dayan met McDonald's standards for quality, service and cleanliness.

The master license agreement provided that if Dayan were in default of any of his obligations under the agreement, McDonald's would give him notice of default and an opportunity to correct the deficiencies within 60 days. Failure to correct the deficiencies entitled McDonald's to terminate Dayan's master license.

After the agreement was executed, Dayan assigned his interest to Raybill Associates, an Illinois limited partnership. Raybill then sublicensed Paris Mac, a French corporation, to operate the McDonald's restaurants in Paris. Thereafter, Paris Mac sublicensed Pigalux, another French company, to operate three restaurants in Paris. Paris Mac also sublicensed LeLazy Place, another French company, to operate four restaurants in Paris. Paris Mac also operates six restaurants in the Paris area itself.

By a supplement to the agreement, Dayan and McDonald's agreed that France and Illinois had jurisdiction to resolve disputes between them.

The supplement stated in relevant part:

"The subsidiary, Raybill, Mac France and Paris Mac each agrees to and does hereby submit to the jurisdiction of the Circuit Court of Cook County, Illinois County Department, Chancery Division (Circuit Court) for the sole purpose of enforcing compliance with

the Agreement as supplemented by this Supplement and for determining any disputes which may arise in connection therewith * * * This provision shall not prevent presentation of any matter to courts of competent jurisdiction in France."

McDonald's alleges that from 1973 through April 1978 it notified Dayan of numerous operating deficiencies in the Paris restaurants. In June 1977 McDonald's conducted a full field study of several of the restaurants. At the conclusion of the study, McDonald's sent a letter to Dayan describing the deficiencies found and noting that a notice of default requiring remedial action within 60 days was justified. The letter stated that if a subsequent inspection found the operations still unsatisfactory, a default procedure under the master license agreement would follow.

On March 29, 1978, under the provisions of French law, McDonald's appeared before a judge of the Tribunal de Grande Instance de Paris, a civil court of general jurisdiction for the city of Paris. McDonald's purpose was to seek the appointments of four Huissiers to conduct investigations to determine whether there were facts indicating noncompliance with the master license agreement. (Under French law, Huissiers are court appointed officials authorized to investigate facts for potential use in legal proceedings.)

Based on findings by the Huissiers, on April 14, 1978, McDonald's gave notice to Dayan of default under the master license agreement. On April 24, the French corporations operating the restaurants in question appeared before the French court and filed a motion to quash the order appointing the Huissiers. The motion was denied and currently, the matter is still pending in that court.

On May 11, 1978, McDonald's filed a second suit in the French court. In that cause, McDonald's alleged that LeLazy Place has infringed on its trademark by constructing a "McDonald's" restaurant without first obtaining an operating license. Previously, McDonald's refused to grant the operating license, citing numerous deficiencies under the master license agreement. This matter is also still pending in the French court.

On June 6, 1978, Dayan filed a motion for leave to file several pleadings in the circuit court of Cook County, the instant case. There he sought an injunction (1) enjoining McDonald's from terminating the operating licenses of the 13 Paris restaurants and (2) affirmatively ordering McDonald's to issue an operating license for the yet unopened Paris restaurant involved in the trademark infringement suit. McDonald's filed a written objection on the grounds that the circuit court of Cook County did not have exclusive jurisdiction and that the matter was pending in the French court. On June 12, the court entered an order granting Dayan leave to file his petition for injunction and simultaneously entered a preliminary injunction. The injunction enjoined McDonald's from

terminating the master license agreement or any of the 13 operating licenses involved in the March 28 suit in France. It also affirmatively ordered McDonald's to issue the operating license for the restaurant involved in the separate trademark infringement suit. Immediately prior to the entry of the order granting the injunction, McDonald's tendered a verified answer to the petition for injunction. The trial court, however, refused to accept the answer until after it issued the injunction. The court stated that if it allowed the answer to be filed prior to the issuance of the injunction, it would then be required to hold a hearing which it did not want to do because of scheduling problems. Consequently, the trial court issued the injunction, gave McDonald's leave to file its answer, and then set the matter for hearing on October 10, 11, 1978. Pursuant to Supreme Court Rule 307, McDonald's filed this appeal.

On appeal, McDonald's first argues that the trial court erred in allowing Dayan leave to file his petition for injunction since the matter was pending in the French court.

■■ We disagree. In Illinois, the rule is that the mere pendency of a lawsuit in a foreign country is not a bar to proceedings in our courts. (*Goldberg v. Goldberg* (1975), 27 Ill. App. 3d 94, 327 N.E.2d 299; *Farah v. Farah* (1975), 25 Ill. App. 3d 481, 323 N.E.2d 361.) Though *Goldberg* and *Farah* were divorce proceedings, the rule has broader application. (See *Pesquera Del Pacifico v. Superior Court* (1949), 89 Cal. App. 2d 738, 201 P.2d 553.) We are not dealing with a judgment entered by a foreign court, but simply the pendency of another suit. The trial court had jurisdiction to entertain Dayan's petition for injunction, though concurrent jurisdiction was shared with the French court.

McDonald's next argues that Dayan failed to allege grounds sufficient for the issuance of an injunction.

■■ We believe sufficient grounds were established and that the injunction was properly ordered. In general, injunctions rest on the authority of courts of equity to restrain persons within their limits of jurisdiction from doing inequitable acts to the wrong and injury of others. The authority is further derived from the power of the State to compel its citizens to respect its laws even beyond its territorial limits. (*Kahn v. Kahn* (1945), 325 Ill. App. 137, 59 N.E.2d 874.) Here, the controversy concerns the rights of the parties under the master license agreement, a contract executed in Illinois, according to Illinois law. Certainly the trial court had legitimate authority to issue the injunction and further, is in a better position to resolve the dispute than the French court, which must attempt to interpret Illinois law.

■■ As to the actual issuance of the preliminary injunction, a trial court has broad discretion when issuing an injunction and said injunction will not be set aside unless there is a manifest abuse of discretion. (*Board of*

*Education v. Peoria Education Association* (1975), 29 Ill. App. 3d 411, 330 N.E.2d 235.) We find no abuse of discretion here. The trial court found that irreparable harm would result to Dayan if the injunction were not issued. As the trial judge found:

> "I'm not suggesting that McDonald's is wrong here. All I'm saying is if I let them proceed, Dayan goes out of business and then it's too late. His business is destroyed."

The only hardship suffered by McDonald's by the issuance of the preliminary injunction is a potential delay in the cancellation of the franchise, should McDonald's prevail on the merits. Further noted by the trial judge when issuing the preliminary injunction was the likelihood that McDonald's may not prevail on the merits of the case since the judge observed that "* * * McDonald's is not acting in good faith here." Consequently, we conclude that the preliminary injunction was properly issued.

McDonald's finally argues that the issuance of the preliminary injunction without an evidentiary hearing was error. Supporting its position, McDonald's cites *Paddington Corp. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484, for the proposition that a preliminary injunction may not be issued without a prior evidentiary hearing, where the pleading shows a verified answer that controverts material factual allegations in plaintiff's complaint.

● 4 The instant case is distinguishable from *Paddington*, however. Here there were no factual disputes. As the attorney for McDonald's stated "I don't think there are factual disputes * * *." It was only after the trial court heard arguments of counsel and decided to stay proceedings that McDonald's evidenced a desire to file a verified answer. The court appropriately characterized McDonald's last minute attempt to file a verified answer as an attempt to "out-maneuver" the court. Clearly, this was not a *Paddington* situation.

On July 25, 1978, on motion of defendant McDonald's, this court entered an order setting this appeal for oral argument. However, upon full consideration of the record and the briefs, we have concluded that no substantial question is presented, and accordingly we will dispose of the appeal as above set forth without oral argument. Supreme Court Rule 352(a), Ill. Rev. Stat. 1977, ch. 110A, par. 352(a).

Accordingly, the order of the circuit court of Cook County is affirmed.

Order affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.