RAYMOND DAYAN et al., Plaintiffs-Appellants, v. McDONALD'S CORPO-
RATION, Defendant-Appellee.

First District (1st Division)   Nos. 82—3023, 83—674 cons.

Opinion filed April 16, 1984.—Rehearing denied July 31, 1984.

12

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Saul A. Epton and Gerald B. Mullin, of counsel), for appellants.

Foran, Wiss & Schultz, of Chicago (Thomas A. Foran, Richard G. Schultz, and James R. Figliulo, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Raymond Dayan[1] appeals from two separate orders entered by the trial court—one awarding $1,842,905.38 in attorney fees and expenses to defendant McDonald's Corporation pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611) and another awarding the defendant corporation $30,891.55 in costs. These fees and costs were taxed against plaintiff in connection with plaintiff's suit to enjoin McDonald's from terminating his restaurant franchise in Paris, France. After a lengthy trial, the circuit court denied Dayan's request for a permanent injunction and dissolved an existing preliminary injunction, holding Dayan's Paris operations breached the franchise agreement by failing to adhere to McDonald's quality, service, and cleanliness standards (QSC). Subsequently, the trial court entered orders taxing costs, fees and expenses against plaintiff, which resulted in the filing of two separate appeals. These appeals have been consolidated for review in the present case. A separate opinion has been issued in connection with plaintiff's appeal from the trial court's judgment denying the re-

---

[1]After the filing of the opinions disposing of two interlocutory appeals, Dayan amended his complaint and sued not only individually but also as a representative of Raybill Associates, a limited partnership of which Dayan is the sole general partner and as a representative of Paris Mac, a foreign corporation and sublicensee of Raybill. For the sake of continuity and simplicity, we will continue to refer to plaintiffs either with the singular "plaintiff" or as "Dayan."

quested injunctive relief. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972.) In affirming the trial court's judgment with respect to plaintiff's petition for a permanent injunction, we reviewed the history, background, and much of the evidence produced during 65 days of trial and will not repeat that analysis here.

Plaintiff raises the following issues for review: (1) whether the circuit court erroneously awarded fees and expenses pursuant to section 2—611, finding certain allegations of plaintiff's amended petition untrue and made without reasonable cause; (2) whether the trial court erroneously included certain items in its calculation of the section 2—611 award; (3) whether the circuit court erroneously retained jurisdiction to supplement the award of fees and expenses for amounts expended by McDonald's in defense of the appeals before this court; and (4) whether the trial court erred in allowing witness and trial interpreter fees as costs.

I

Section 2—611, formerly section 41 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 41), permits the taxing of attorney fees and reasonable expenses against a party that pleads untrue statements without reasonable cause, providing in relevant part:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1981, ch. 110, par. 2—611.)

The assessment of attorney fees against a litigant for making false allegations without reasonable cause represents an important and longstanding exception to the general rule that a prevailing party is not ordinarily entitled to recover his litigation expenses. Similar provisions have been part of the statutory law of this State since 1933. However, prior to 1961 the failure of our courts to apply these sanctions was almost complete. See, *e.g., Adams v. Silfen* (1951), 342 Ill. App. 415, 96 N.E.2d 628; *Palmer v. Gillarde* (1941), 312 Ill. App. 230, 38 N.E.2d 352.

The seminal case of *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 178 N.E.2d 650, marked a turning point in the willingness of Illinois appellate courts to uphold awards of attorney fees and expenses when taxed against a party pleading false statements without reasonable

cause. In *Ready*, the court scrutinized an award of attorney fees against a plaintiff made pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1959, ch. 110, par. 41). The case was not tried to verdict but was disposed of on defendant's motion to dismiss. On appeal, the plaintiff argued that section 41 should be strictly construed and that since there was no trial an award of attorney fees was improper. The court rejected this argument, specifically holding that any judicial examination of the issues between the parties, whether they be of law or fact, was sufficient to support a section 41 award where the pleadings were later found to be untrue and not filed in good faith. (*Ready v. Ready* (1961), 33 Ill. App. 2d 145, 159-61.) The court further articulated the policy underlying section 41, noting:

> "Section 41 is an attempt of the legislative to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit. The failure of the courts to apply the sanction provided in this section of the Practice Act has been frequently criticized by writers in the various law reviews." (33 Ill. App. 2d 145, 161-62.)

The court went on to state:

> "One of the purposes of section 41 is to prevent litigants being subjected to harassment by the bringing of actions against them which in their nature are vexatious, based upon false statements, or brought without any legal foundation. If the court should hold that such suits could be brought one after the other and if the plaintiff dismissed his suit or suffered an involuntary nonsuit before trial the sanction of section 41 would not apply, it would nullify the purpose of the statute." 33 Ill. App. 2d 145, 162.

Subsequent cases have frequently quoted the above passages, reiterating and enlarging the holdings in *Ready*. Thus, many cases have stressed the penal nature of section 41 and the requirement that the application of this section be limited to cases falling strictly within its terms. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185; *Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 431 N.E.2d 1364.) Other cases have noted the remedial aspects of section 41 stated in *Ready* of protecting a litigant from baseless lawsuits. (*Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 321 N.E.2d 159; *Grandys v. Spring Soft Water Conditioning Co.* (1968), 101 Ill. App. 2d 225, 242 N.E.2d 454.) It has also been held that section 41 sanctions are appropriate even though the case has been disposed of on

motion (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297 (motion to dismiss); *Sarelas v. Law Bulletin Publishing Co.* (1969), 115 Ill. App. 2d 205, 253 N.E.2d 168 (motion for summary judgment)), that the burden is on the movant to show he is entitled to recover under section 41 (*Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716), that a separate hearing is dictated where one is necessary to determine whether the section 41 requirements have been met (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 394 N.E.2d 1273), and that the allowance of fees and expenses under section 41 is a matter entrusted to the sound discretion of the trial court, whose determination will not ordinarily be disturbed on review (*People v. Frieder* (1980), 90 Ill. App. 3d 116, 413 N.E.2d 432).

A relatively recent amendment to section 41 has further liberalized its application. Prior to 1976, section 41 permitted the assessment of fees and expenses against a party that made allegations or denials "without reasonable cause and *not in good faith*, and found to be untrue." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110, par. 41.) Effective September 1976, the legislature amended the statute, eliminating the requirement that the movant prove the allegations were "not in good faith." (Ill. Rev. Stat. 1977, ch. 110, par. 41.) Subsequent appellate opinions have acknowledged that this deletion reduces the burden on the movant by eliminating the pre-1976 requirement of demonstrating bad faith. (*People ex rel. Reliford v. Roberts* (1983), 112 Ill. App. 3d 351, 445 N.E.2d 482; *People v. Frieder* (1980), 90 Ill. App. 3d 116, 413 N.E.2d 432.) Section 2—611 sanctions are now proper where the moving party demonstrates that his opponent has abused the right of free access to the courts by pleading untrue statements of fact which he knew or reasonably should have known were untrue. *Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 417 N.E.2d 167.

Applying these principles to the case at bar, we must first determine whether the threshold requirements of section 2—611 have been met. Dayan alleged in both his original and amended verified pleadings that at all times he was in compliance with McDonald's standards of quality, service, and cleanliness which he was contractually obligated to observe under the master licensing agreement. Paragraph 11 of his amended verified petition states:

"At all times, petitioners have complied with the spirit and intent of the agreement and performed the promises in the agreement. Petitioners have complied with all reasonable requests made by McDonald's with respect to the operation of the

restaurants consistent with availability in France of equipment, parts and foodstuffs, the laws and regulations of the Republic of France, and customs and tastes of the French public. Petitioners have promptly acted and continue to act promptly to comply with any and all reasonable requests, to change or improve operations, made by defendant. At no time have petitioners been in breach of the master license agreement."

Dayan further alleged in both his original and amended verified pleadings that McDonald's issued the default and termination notices in bad faith for the purpose of wrongfully depriving him of his franchise. Paragraph 14 of his amended verified petition states:

"The notice of default and notice of termination of the master license agreement and refusal to issue further operating licenses were wrongful acts of McDonald's, done by McDonald's in order to wrongfully deprive petitioners of their franchise; in breach of the contractual obligations of McDonald's, including the implied covenants to act in good faith and deal fairly with petitioners."

These allegations created the central issues upon which the case was tried.

The trial court found that the allegations of contract compliance and McDonald's bad faith were untrue and made without reasonable cause. The court stated in its memorandum opinion that "Dayan knew [the allegations] to be false and yet he presented them in a verified pleading." It found that Dayan asserted facts "known to be untrue *** both at the pleading and the testimony stages" and that plaintiff's case was entirely predicated upon the untrue allegations of compliance and McDonald's bad faith.

The sheer magnitude of the QSC violations revealed at trial clearly demonstrated the falsity of plaintiff's allegations and militates against a finding that these pleadings were made with reasonable cause. The trial court found that Dayan's Paris restaurants were in flagrant violation of McDonald's QSC standards and that Dayan's testimony of compliance was false and calculated to mislead the court. This finding was well supported by the extensive testimony of many witnesses who were present at the various inspections of these restaurants, by laboratory tests of samples taken from the restaurants showing dangerously high bacterial counts, and by 1,072 photographs taken during the restaurant inspections which were admitted into evidence at trial. The size, quality, and character of these QSC violations and the indescribable unsanitary conditions of these restaurants revealed by the evidence of record conclusively demonstrated Dayan's

complete disregard of McDonald's QSC standards.

The testimony of plaintiff's witnesses of nearly constant cleaning and servicing for all restaurant areas was obviously false and totally rebutted by defendant's evidence. For example, Dayan's witnesses testified that the toilets were "constantly disinfected" and cleaned every 15 to 20 minutes throughout the day. However, photographic evidence clearly showed urine and excrement covering bathroom floors, toilets and bowls. The walls were littered and covered with accumulations and crusts of dirt and grime.

Dayan's employees testified that crews worked "all night long" cleaning the restaurants and that "refrigerators were emptied, cleaned, and reordered again and filled again." They also claimed that every morning the refrigerators were again cleaned. Photographs revealed that the interiors and exteriors of refrigerators, cold storage areas, and freezers were incredibly filthy, greasy, and smeared with sauces and food. Food products, including moldy sauce, exposed chicken, lettuce and onions, were placed on and under rusty refrigerator shelving. Refrigerator fans, drains, and coils were blackened with dried food, chicken blood and grease residue.

Dayan's employees also testified that food storage areas were cleaned each night and inspected daily by a supervisor and that only minor problems existed "here and there." Again, photographs and testimony established the falsity of this testimony. The walls and ceilings of the food storage area were damp, stained and covered with mold. Mold covered boxes of food products. Exposed crates of lettuce were stacked directly on an open, filthy trash bucket filled with garbage. Open containers of marinated chicken were on filthy pallets next to cleaning fluid. Raw food products were stacked directly on dirty, wet floors. Dogs were kept in some storerooms and dog urine and excrement were found next to stored food. Rat poison was found spilled beside an "oozing" carton of McDonald's sauce.

These examples are illustrative of many others found throughout the 9,800 pages of trial transcript and support the trial court's finding that plaintiff presented false evidence in support of pleadings he knew were false. As the trial court properly surmised, "Dayan could not have been oblivious to those major deficiencies."

Further evidence on plaintiff's knowledge of falsity is furnished by the destruction of reports within plaintiff's control which documented the condition of his restaurants during the time in question. (*Norris v. Drake Associates, Inc.* (1969), 110 Ill. App. 2d 23, 35, 249 N.E.2d 102.) Dayan's employees testified that a daily inspection report of restaurant cleanliness was prepared by each restaurant super-

visor. They further testified that a night cleaning checklist also existed and that a monthly checklist was used to inspect all of the restaurant equipment to ensure it was in good working order and was calibrated to McDonald's standards. Once or twice a month every restaurant was also allegedly subject to an inspection which lasted one full day, during which a four-part report was prepared on product quality, cleanliness, customer service, and accounting procedures. These full-day inspection reports were reviewed twice a month at supervisor meetings "to ensure that McDonald's standards and procedures were respected."

These reports, which according to plaintiff's employees corroborated their testimony of QSC compliance before and during the various restaurant inspections, were repeatedly requested by McDonald's throughout discovery. Defendant requested production of these documents initially on July 7, 1978, again on August 5, 1980, and once again on April 28, 1981. None was ever produced.

Some of these documents, which allegedly contradict the findings of the February and June-July 1977 inspections as well as the findings of the April and September 1978 inspections, were admittedly destroyed as late as 1980. Incredibly, plaintiff claims to have destroyed these 1977 and 1978 documents, not only after anticipating this QSC litigation but also after receiving the April 1978 default letter from McDonald's, after filing his June 1978 petition for an injunction, after receiving the September 1978 termination notice, and after defendant requested these documents be produced. Significantly, plaintiff did not file these reports allegedly showing contract compliance to support his petition for a preliminary injunction in June 1978.

Additional evidence that plaintiff knew his pleadings were false is revealed by his resort to testimony that was clearly perjured. In plaintiff's case in rebuttal, Dayan presented photographs and testimony from his employee, Eva Assayag, and a privately retained *hussier*, Phillippe Chale, in an attempt to support his allegations of compliance and to discredit McDonald's photographs, which had objectively proved noncompliance. The trial court found that

> "[t]he testimony of Eva Assayag was a lie, pure and simple. It was a well rehearsed lie and it was calculated to deceive the Court,"

that

> "[t]he one fact that Chale did testify to with unwavering certainty (i.e. the time and circumstances of certain photographs) was later exposed as a complete and total fabrication—that fact was presented here by this French court official with knowl-

edge that it was false. Hussier Chale discredited himself and disgraced his office,"

and finally that

"[h]er testimony [E. Assayag] 'shows' this Court and all who care to read it, that she is a liar who is willing to travel 4142 miles to 'tell' an outrageously contrived story about photographs and dates which destroyed not only her credibility and the credibility of Huissier Chale ***."

The 1,072 photographs taken during the French court-ordered inspections of April 4 and 5 and September 6, 7, and 8 of 1978 graphically proved that Dayan's claim of compliance with McDonald's standards was wholly unfounded. In an attempt to discredit this evidence, Dayan presented the testimony of several of his employees, who stated that the photographs taken during these inspections were staged and did not accurately represent actual conditions. Plaintiff then offered into evidence photographs of his own showing relatively clean conditions in certain limited areas of his restaurants.

Plaintiff had to persuade the trial court that his photographs showing compliance were taken just before the court-ordered inspections on September 6, 7, and 8. There would then be a strong inference that plaintiff's photographs depicted actual conditions and defendant's photographs taken a short time later were staged. On the other hand, if Dayan's photographs were taken after the September inspections and they showed the same scenes to be cleaner than those depicted in McDonald's photographs, then there would be an equally strong inference that in response to the McDonald's photographs these areas were specially cleaned and photographed by plaintiff.

To prove his photographs were taken spontaneously and before the September court-ordered inspections, plaintiff presented the testimony of Eva Assayag and Phillippe Chale. Chale unequivocally testified that Dayan's photographs were taken at the "end of August, beginning of September." Similarly, Assayag, Dayan's cousin and director of advertising, testified that she and Chale visited 12 of Dayan's restaurants without advance warning to any of the supervisors and that all of plaintiff's photographs "were taken at the end of August and the first days of September" within a certain "two to four days." On eight separate occasions, she repeated her testimony that all of these photographs were taken within this time frame shortly before the September 6, 7, and 8 inspections.

This testimony was conclusively proved false. On Assayag's *voir dire*, it was established that one of plaintiff's photographs of the outside of a restaurant located in Creteil showed trees behind the build-

ing. This photograph, which Assayag swore was taken in late August or the first days of September, showed those trees bare of leaves; the photographs taken at the September 8 court-ordered inspection showed the same trees full of leaves. Plaintiff's photographs of the Poissonniere restaurant showed that it was open and customers were purchasing food in the restaurant. Yet the record reveals that this restaurant was closed by police order during all of August and September 1978 because of narcotics problems. When the falsity of Assayag's testimony was revealed by these undeniable facts, plaintiff's counsel withdrew her as a witness.

We believe the above evidence overwhelmingly establishes that the allegations contained in paragraphs 11 and 14 were false and made without reasonable cause. The most compelling proof that a litigant knew or should have known his allegations or denials were untrue is provided by his presentation of fabricated testimony or the concealment of evidence. The courts of this State and legal commentators have long recognized that a party's presentation of false evidence or his concealment of evidence proves his consciousness that his pleadings are unfounded and unreasonably made. As stated by Dean Wigmore:

> "It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoilation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause." (2 Wigmore, Evidence sec. 278, at 133 (Chadbourn rev. 1979).)

Our supreme court has also recognized the logical inference to be drawn from a party's fabrication of evidence, stating:

> " 'It is believed to be a rule never questioned, that it may be shown that a party has destroyed or suppressed material evidence or has fabricated such evidence, because it is in the nature of and implies an admission that he has no right to recover if the case was tried on the evidence in the case as it exists; that it is not sufficient to recover unless aided by suppressing evidence or the fabrication of more evidence. ***' "
> *United States Brewing Co. v. Ruddy* (1903), 203 Ill. 306, 309,

67 N.E. 799, quoting *Chicago City Ry. Co. v. McMahon* (1882), 103 Ill. 485, 487-88.

Within the context of a section 2—611 award, it has been held that the destruction of evidence or the presentation of false evidence permits an inference that the offending party knew or reasonably should have known his pleadings were false and, therefore, the imposition of fees and expenses was proper. *McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 448 N.E.2d 905; *In re Estate of Knutson* (1980), 83 Ill. App. 3d 907, 404 N.E.2d 1003; *Norris v. Drake Associates, Inc.* (1969), 110 Ill. App. 2d 23, 249 N.E.2d 102.

■■ In our previous opinion affirming the trial court's judgment permitting termination of plaintiff's franchise (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972), we reviewed the prior history of dealings between McDonald's and Dayan, the frequent requests by McDonald's that plaintiff maintain QSC standards, plaintiff's obstinate refusal to do so, and, after being given several chances to bring his restaurants up to standard, the ultimate default notice and termination of the franchise agreement by McDonald's. This course of dealings between the litigants, the existence of widespread and flagrant noncompliance with QSC standards, plaintiff's resort to perjured and false testimony and his destruction of material evidence, unequivocally established that his pleadings were false and plaintiff knew they were false. Accordingly, we find that plaintiff was properly assessed fees and expenses pursuant to section 2—611.

## II

■■ Next, plaintiff argues that the trial court improperly included certain items in its calculation of the section 2—611 award. Specifically, plaintiff assigns error with respect to the inclusion of the following: (1) all fees and expenses allegedly not directly related to the allegations contained in paragraphs 11 and 14 of the amended complaint; (2) all fees and expenses incurred prior to the filing of the amended petition; (3) all fees and expenses incurred during the preliminary injunction proceedings; and (4) the fees incurred in presenting the section 2—611 motion.

The record reveals that after the trial court granted defendant's section 2—611 petition, McDonald's was ordered to submit "a detailed breakdown of the fees and expenses incurred and sought to be awarded under section 2—611." McDonald's filed exhibits detailing the fees and expenses for which it sought reimbursement. Dayan filed objections to the exhibits and McDonald's filed a reply to Dayan's ob-

jections. At a hearing to determine the amount of the award, Dayan's counsel stipulated that the legal work set forth in exhibit A was performed, that McDonald's had paid for the attorney fees and expenses set forth in exhibits A and B, and that the hourly rates charged by McDonald's counsel were the usual and customary rates charged by attorneys of similar caliber and experience.

Thomas A. Foran of Foran, Wiss & Schultz, counsel for McDonald's, testified and was extensively cross-examined. This testimony established that all of the legal work listed in schedules A through G of exhibit A was done in response to Dayan's initial and continuing allegations that his restaurants were in compliance and that McDonald's had acted in bad faith. Exhibit A, containing fee schedules, and exhibit B, documenting McDonald's expenses, were admitted into evidence. After plaintiff cross-examined the witness, McDonald's rested. Dayan did not present any rebuttal evidence.

Following this hearing, the trial court awarded McDonald's $1,536,472.25 in attorney fees and $306,433.13 in expenses pursuant to section 2—611.

Initially, we note that while plaintiff objects to the award of fees and expenses on certain specific matters, he points to no evidence which would demonstrate that the attorneys' time on these matters was improper or not reasonably necessary for the proper defense of this lawsuit. Plaintiff's stipulation, the testimony at the hearing and the detailed breakdown of fees and expenses set forth in schedules admitted into evidence support the award ordered by the trial court. Dayan had a full opportunity to cross-examine and elicit any explanation of the entries detailed in the exhibits. While he had an opportunity to put on rebuttal testimony challenging any particular amount in the exhibits, he chose not to introduce any evidence.

Dayan claims that because certain legal work performed in preparation for or during trial was not directly related to paragraphs 11 and 14 of the amended complaint, McDonald's was not entitled to the cost of that work. The trial court expressly rejected this contention, stating:

> "By advocating an isolated focus on each reimbursable component part of preparation and trial the plaintiff ignores the fact that in this case no component part would be required absent the basic and all pervasive false pleadings made without reasonable cause."

We believe the trial court correctly resolved this issue. The isolated focus on each reimbursable component urged by plaintiff is not necessary where the false allegations made without reasonable cause

are the cornerstone of the entire baseless lawsuit. (*McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 210, 448 N.E.2d 905.) Here, the false assertions of Dayan's compliance and McDonald's bad faith were found to be the gravamen of Dayan's entire action, without which there would be no dispute and no need for trial. Thus, all of McDonald's expenses and fees in defending this unfounded suit may properly be said to have been "actually incurred *** by reason of the untrue pleadings." Ill. Rev. Stat. 1981, ch. 110, par. 2—611.

Nor do we believe that the strict construction normally afforded section 2—611 requires a contrary result. Policy considerations favoring free access to the courts require that the imposition of any fee award under this section be specifically limited to those cases where the statutory requirements have been met. (*Fewer v. Grant* (1982), 111 Ill. App. 3d 747, 751, 444 N.E.2d 628; *Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943, 335 N.E.2d 172.) Accordingly, the trial court should only grant an award where the moving party has demonstrated that his opponent has pleaded untrue statements which the pleader knew or reasonably should have known were untrue. (*Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 243, 417 N.E.2d 167.) However, once it has been established that a litigant has abused his right of free access to our court system by intentionally or recklessly pleading false matters, no rational purpose is served by strictly construing the scope of the resulting section 2—611 award. A contrary holding would only serve to aid those who would engage in such abusive practices and would seriously undermine the legislative intent of "penaliz[ing] the litigant who pleads frivolous or false matters." *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 161-62, 178 N.E.2d 650.

In view of the foregoing, we find the trial court did not abuse its discretion by taxing Dayan for the amount of fees and expenses incurred during and in preparation of the trial.

■ Next, Dayan argues that the trial court erred in failing to subtract all expenses and fees incurred prior to filing the amended petition in 1981. We disagree.

A comparison of the initial pleadings filed in 1978 with the amended pleadings filed in 1981 reveals that both sets of pleadings are premised on the same untrue allegations of QSC compliance and bad-faith termination. While specific words were changed in the 1981 amended petition, both sets of pleadings convey the same false assertions.

The proposition that a section 2—611 award cannot be imposed

when the pleadings have been amended does not apply where plaintiff's amended complaint renews allegations which he knew or reasonably should have known were false. (*Kostbade v. Telford* (1973), 13 Ill. App. 3d 961, 963, 301 N.E.2d 321.) Since this clearly occurred in the case at bar, we find the trial court properly rejected Dayan's suggestion that the court "meter the abuse only from the time those specified words were first uttered." Plaintiff was not penalized for the specific words contained in the amended petition, but rather for the untrue allegations of QSC compliance and bad-faith termination which were present from the inception of this lawsuit. Accordingly, we reject plaintiff's contention that only fees and expenses incurred after the filing of the amended petition were properly awarded.

Next, plaintiff contends that the trial court improperly awarded fees and expenses incurred in connection with the preliminary injunction proceedings. Dayan claims that because he prevailed in obtaining the preliminary injunction and because the granting of the preliminary relief was affirmed on interlocutory appeal (*Dayan v. McDonald's Corp.* (1978), 64 Ill. App. 3d 984, 382 N.E.2d 55), fees and expenses incurred in those proceedings cannot be properly awarded pursuant to section 2—611. We disagree.

As the trial court correctly realized, Dayan prevailed at these early stages only because his false allegations led the trial court and this court to the incorrect belief that " '*** McDonald's [was] not acting in good faith ***.' " (*Dayan v. McDonald's Corp.* (1978), 64 Ill. App. 3d 984, 988, 382 N.E.2d 55.) The preliminary injunction issued upon plaintiff's allegation in his verified pleadings that he adhered to McDonald's standards. It issued after Dayan filed with the trial court six inspection reports prepared by Phillippe Chale, a privately retained *huissier*, which indicated that six of Dayan's restaurants adhered to the McDonald's standards. At trial, nearly four years later, it was established that Chale simply prepared one report and photocopied it six times, changing only the address of the restaurant on the reports. Contrary to Dayan's contention, artful deception at the early stages of litigation does not preclude a later award of fees and expenses when the falsity of the allegations is finally revealed.

Nor do we believe the trial court erred in allowing McDonald's to recover fees and expenses incurred in appealing the order granting the preliminary injunction. Section 2—611 contemplates an award which "encompasses all resulting expenses." (*Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253, 263, 379 N.E.2d 674.) The courts of this State have consistently allowed a party to recover appellate court attorney fees and expenses pursuant to section

2—611. (*McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 210, 448 N.E.2d 905; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 33, 380 N.E.2d 873; *Schroeder v. Busenhart* (1971), 133 Ill. App. 2d 180, 183-84, 272 N.E.2d 750.) Furthermore, there is no indication in the record that McDonald's interlocutory appeal was unjustified, improper or unnecessary.

We also reject Dayan's contention that McDonald's is precluded from recovering fees and expenses incurred in the preliminary injunction proceedings because McDonald's allegedly admitted, for the purposes of the proceeding, the truth of the allegations contained in Dayan's petition. A directly analogous argument was recently addressed in *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297, and was rejected by our supreme court. There, the court held that where a party prevails on a motion to dismiss, a subsequent award pursuant to section 2—611 was not precluded. The supreme court specifically noted:

"Though on a motion to strike or dismiss the allegations made by the adverse party will be regarded as being true for purposes of the motion, that will not prevent a court from later allowing penalties if in fact it is determined that the allegations were 'made without reasonable cause and [are] found to be untrue ***.' Ill. Rev. Stat. 1979, ch. 110, par. 41." 84 Ill. 2d 178, 185.

In view of the foregoing, we find that the trial court did not abuse its discretion in awarding McDonald's fees and expenses incurred in connection with the preliminary injunction proceeding.

■ Next, plaintiff argues that the trial court erred in awarding attorney fees and expenses for work performed in the prosecution of the section 2—611 petition. Our case law is to the contrary.

In *Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253, 379 N.E.2d 674, the court unequivocally held that a party is entitled to be reimbursed for the expenses and fees incurred in pursuit of a section 2—611 petition. The court specifically noted:

"That section subjects the offending pleader 'to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with reasonable attorney's fee ***.' This language encompasses *all* resulting expenses, including the expense of section 41 proceedings themselves." (Emphasis added.) 63 Ill. App. 3d 253, 263.

Plaintiff argues that the holding in *Brandenberry Park* is questionable in view of two recent appellate opinions, *Glenview Park Dis-*

*trict v. Redemptorist Fathers* (1980), 89 Ill. App. 3d 623, 412 N.E.2d 162, and *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1981), 99 Ill. App. 3d 340, 425 N.E.2d 550, *rev'd on other grounds* (1983), 94 Ill. 2d 535, 447 N.E.2d 288. However, neither of these cases cites *Brandenberry Park*, nor do they involve the award of fees and expenses incurred in prosecuting a section 2—611 petition.

In *Glenview Park District*, the court construed the fee provisions of section 10 of the Eminent Domain Act (Ill. Rev. Stat. 1977, ch. 47, par. 10(a)), which provides that a property owner may be reimbursed for the fees and expenses incurred in the defense of a condemnation petition under certain circumstances. The court held that time spent in pursuit of fees under section 10 was not time spent in defense of a condemnation petition and was therefore not compensable.

In *Stocker*, the defendant sought damages under section 12 of the Injunction Act (Ill. Rev. Stat. 1979, ch. 69, par. 12), which provides for the payment of damages, including attorney fees, to an enjoined party where a temporary restraining order or preliminary injunction is wrongfully issued and dissolved prior to trial. The damages recoverable under section 12 are limited to "damages actually suffered during the life or pendency of the injunction." (*Bank of Lyons v. Schultz* (1980), 78 Ill. 2d 235, 242, 399 N.E.2d 1286.) The appellate court in *Stocker* correctly held that fees in pursuit of fees cannot be considered as damages under section 12 for they are necessarily incurred after the injunction has been dissolved, not during its pendency. The court went on to allow recovery of attorney fees and damages incurred during the life of the injunction. This award was subsequently reversed by our supreme court, which held that the moving party had failed to establish that the provisional injunctive relief was wrongfully issued. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 544-45, 447 N.E.2d 288.

The statutes involved in *Glenview Park District* and *Stocker* are fundamentally different from section 2—611, which " '*** is an attempt of the legislature to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit.' " (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 184, 417 N.E.2d 1297; *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 161-62, 178 N.E.2d 650.) Section 12 of the Injunction Act and section 10 of the Eminent Domain Act are not penal statutes, and neither statute was meant to "encompass all resulting expenses" of litigation. Accordingly, we reject the argument that the holdings in these two cases have modified *Brandenberry Park*.

The applicable case law and common sense require a finding that it was proper for the trial court to grant McDonald's reimbursement for the fees and expenses incurred in litigating the fee issue since it was Dayan's false allegations that spawned this entirely unnecessary litigation. Again, we wish to emphasize there is no indication that this portion of the award is excessive or unreasonable. Accordingly, we find the trial court did not abuse its discretion in taxing Dayan for McDonald's fees incurred in litigating the section 2—611 issue.

## III

■ Next, Dayan argues that the trial court erred in retaining jurisdiction to supplement the section 2—611 award with the expenses and fees incurred by McDonald's on appeal. Plaintiff's contention is totally without merit.

Under section 2—611, it has long been recognized that a trial court is authorized to supplement such an award with the fees and expenses a prevailing party is forced to incur on appeal of the baseless lawsuit. (*McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 210, 448 N.E.2d 905; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 33, 380 N.E.2d 873; *Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 190, 258 N.E.2d 150.) The trial court's retention of jurisdiction to award appellate fees and expenses for this needless extension of a baseless lawsuit is in complete accord with the numerous cases interpreting section 2—611. Accordingly, we find no error in this regard.

## IV

■ Finally, Dayan claims that the trial court erred in allowing witness and trial interpreter fees as costs. It should be noted that these costs were awarded in separate order of the trial court entered prior to the resolution of defendant's section 2—611 petition and are therefore not part of the section 2—611 award.

As our supreme court has recently noted in *Galowich v. Beech Aircraft Corp.* (1982), 92 Ill. 2d 157, 441 N.E.2d 318, the allowance or recovery of costs is entirely dependent on statutory authorization and only those items designated by statute can be taxed as costs. Here, the statutory authority for the trial court's order would appear to be section 5—118 of the Illinois Code of Civil Procedure, which gives the trial court discretion "to award costs or not" (Ill. Rev. Stat. 1981, ch. 110, par. 5—118). The court in *Galowich* construed section 5—118 giving the term "costs" as used therein an unusually narrow

application. The court went on to state that the more expansive remedy of "reasonable expenses actually incurred" was only appropriate where the moving party could demonstrate that the section 2—611 requirements of a false pleading made without reasonable cause had been met. *Galowich v. Beech Aircraft Corp.* (1982), 92 Ill. 2d 157, 167-68, 441 N.E.2d 318.

A review of the judgment order for costs entered in the present case reveals that the trial court made explicit reference to *Galowich* and the pending section 2—611 petition which was also before the court. The trial court then considered the various expenses incurred by McDonald's and allocated them into two categories. Those properly compensated under the restrictive application of the term "costs" given in *Galowich* were awarded; all other expenses were denied and were to be considered in connection with defendant's pending section 2—611 petition. Judgment was entered accordingly and included the actual expenses defendant incurred in producing its witnesses for trial as well as the cost of an interpreter used at trial. Subsequently, the trial court granted defendant's section 2—611 petition.

Arguably, the trial court may have erred in including the witness and trial interpreter expenses as costs under section 5—118 given the holding in *Galowich*. However, we need not address this issue, for even though these items may not be compensable under section 5—118, they are clearly awardable under the more expansive remedy provided by section 2—611. Since McDonald's subsequently demonstrated that a section 2—611 award was warranted, a possible trial court error in initially allocating these items as compensable under section 5—118 instead of including them in the items properly brought under section 2—611 was harmless and does not require reversal.

In summary: we affirm the judgment of the trial court awarding McDonald's $1,536,472.25 in attorney fees and $306,433.13 in expenses pursuant to section 2—611; we affirm the judgment of the trial court awarding $30,891.55 as costs; and we find that this appeal and the appeal of the case-in-chief were needless extensions of a baseless lawsuit and hold that McDonald's is entitled to reasonable attorney fees and expenses incurred in defending these appeals. Accordingly, we remand this cause to the trial court for a hearing to determine and to award reasonable attorney fees and expenses incurred by McDonald's in connection with these appeals.

Affirmed and remanded for further proceedings consistent with the views expressed herein.

McGLOON and GOLDBERG, JJ., concur.